IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| **DAMION SCHINNERER** | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO: |
| | ) | |
| v. | ) | 1:22-cv-00383-TWT |
| | ) | |
| **WELLSTAR HEALTH SYSTEM, INC.,** | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Now Comes Plaintiff, Damion Schinnerer ("Plaintiff" or "Mr. Schinnerer") and brings the instant action against Defendant, Wellstar Health System, Inc. ("Defendant" or "the Company") as follows[1]:

### NATURE OF THE CASE

1. This claim is brought for violations of the Federal Claims Act, 31 U.S.C. § 3730(h) ("FCA"), for violations of the Employee Retirement Income

---

[1] Pursuant to Federal Rules of Civil Procedure Rule 15(a)(1)(A), this Amended Complaint is being filed as a matter of right within 21 days of Plaintiff's initial Complaint, waiver of service of summons requested on February 7, 2022, primarily to correct the omission of the word "System" in Defendant's name.

1

Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), and for breach of contract under Georgia law.

## JURISDICTION AND PARTIES

2. Plaintiff was, at all material times, an employee of Defendant and a resident of Cobb County, in the state of Georgia.

3. Plaintiff was a covered employee and participant in the employer's Health Plan ("Plan") the day before the termination of his employment, which was a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering him a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3).

4. Defendant is a Georgia corporation with its principal place of business located at 793 Sawyer Road, Marietta, Georgia, 30062. It can be served with process through its Registered Agent, Leo E. Reichert at the same address.

5. Defendant, a health system, conducts business in the Northern District of Georgia and employs more than 20 employees who were members of the Plan in the year 2020 and 2021.

6. Defendant is the Plan sponsor within the meaning of 29 U.S.C. §1002(16)(B), and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A).

7. The Plan provides medical benefits to employees and their beneficiaries and is an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

8. As such, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 31 U.S.C. § 3732(a) and 29 U.S.C. § 1132(e) and (f).

9. Venue in this judicial district and division is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district and this division.

10. Venue in this judicial district and division is also proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant has extensive and deliberate contacts in this judicial district and division.

## FACTUAL ALLEGATIONS

11. Defendant is one of the largest health systems in the State of Georgia, providing healthcare within multiple facilities across the state.

12. Defendant receives Medicare and Medicaid reimbursements from the United States government, pursuant to 42 CFR § 400 *et seq.*

13. Plaintiff began his employment with Defendant on or about May 5, 2020, as the Assistant Vice President, Biomedical Engineering.

14. As part of his employment agreement, Plaintiff was entitled to compensation that included a Performance Pay Plan (PPP). The PPP provided him with an incentive bonus up to 18.75%.

15. Plaintiff performed his job in a diligent and skillful manner and successfully met the expectations of the position.

16. As the Assistant Vice President, Biomedical Engineering he was responsible for overseeing the selection, procurement and delivery of biomedical equipment and services.

17. At all relevant times, Defendant represented to the federal government that it utilized a fair and equal opportunity bidding process to select vendors to provide the equipment or services necessary.

18. Plaintiff discovered that Defendant's bidding process for vendor contracts was designed to select pre-chosen vendors.

19. Defendant's bidding process ultimately resulted in a lack of regulatory compliance.

20. Defendant's bidding process resulted in the federal government overpaying for services.

21. While present during a meeting in the first few months of his employment in the Summer of 2020, Plaintiff was told that a vendor, Paces

MedEquip, LLC ("Paces"), had been selected for a surgical device repair. When Plaintiff inquired as to how Paces had been selected, Defendant provided false and fictitious reasons for the selection. In fact, Paces was not the most economical or most effective candidate for the surgical repairs. Upon information and belief, the Vice President of Purchasing was biased towards the vendor.

22. Another example of the unfair bidding process occurred in mid-2020. At that time, William Mayfield, MD ("Dr. Mayfield") was the then-head of the Operating Room Capital Committee. His wife, Mrs. Mayfield was employed by WellStar as a Sales Representative. Stryker Corporation was the vendor that provided Defendant with surgical video and integration equipment. When Dr. Mayfield's wife was terminated from her employment with Defendant, she became employed at Arthrex, Inc. Dr. Mayfield then worked to terminate Stryker's services and obtain new equipment with Arthrex. Arthrex's equipment was inferior to Stryker's. The Defendant's Stryker equipment was fully functional and did not need to be replaced. This expenditure, billed to the federal government, was an unnecessary, and thus, false claim.

23. On another occasion in the Spring of 2021, Plaintiff contacted a vendor that had supplied Defendant with electro-surgical units (ESUs), Medtronic, PLC. Plaintiff reached out to the vendor as he questioned the price Defendant paid for the

units. He noticed that the price was double the typical cost with half the units. Plaintiff demanded that Defendant obtain competing bids for the units and Defendant became hostile. At that time, Denise (last name unknown), Purchasing Manager, whose job functions included biomedical engineering equipment procurement, had a romantic relationship with the technician for Medtronic. Her relationship was not only a violation of the Premier Purchasing Group's contract, but it prevented a fair bidding process from occurring, which resulted in the federal government overpaying for equipment, yet again.

24. In February/March 2020, Mr. Schinnerer reported these incidents to Joseph Braud ("Mr. Braud") now Chief Information Security Officer, and Sandra Lucius ("Ms. Lucius"), Vice President – Information Technology Applications. Plaintiff reported to this management team that he believed the bidding process as described above was unlawful. He knew the practice resulted in receiving payments from the federal government that were higher than they should have been. He specifically complained about knowingly overpaying for services, which ultimately resulted in defrauding the federal government, amongst other issues.

25. Plaintiff's complaints were ignored, and the unlawful conduct continued.

26. In addition, Plaintiff's work environment became hostile, and Defendant became overly critical of him.

27. Having received no response to his prior complaints, Plaintiff escalated his complaints and complained to the Company's Ethic's Hotline. His complaints were the same issues he had complained about, described above, relating to overcharging the federal government through a dishonest and improper bidding process.

28. Plaintiff's actions put Defendant on notice that if his complaints were not resolved, litigation would be a reasonable possibility.

29. Within weeks of his final complaint, on May 2021, Plaintiff was placed on a paid administrative leave for allegedly being "abrasive."

30. Plaintiff vehemently disputed having engaged in any conduct that would warrant the punishment inflicted upon him.

31. The placement on administrative leave was in direct response to his complaints regarding Defendant's fraudulent bidding process and his concerns that the process resulted in the Company charging the federal government in excess of the value of certain equipment and services.

32. On June 30, 2021, Mr. Braud held a meeting with Plaintiff regarding the allegations against him.

33. During that meeting Mr. Braud informed Plaintiff that the abrasiveness that the Company referred to in its decision to suspend Plaintiff was only present when he complained about the regulatory issues.

34. Mr. Braud also made it very clear to Plaintiff that he would not be returning from his administrative leave. Indeed, Plaintiff did not return.

35. On or around October 1, 2021, Defendant terminated Plaintiff's employment in retaliation for his complaints regarding the unlawful bidding process.

36. At the time of his termination, Plaintiff had successfully met the requirements of his position and performed his job well. As such, he was eligible for the PPP bonus described above.

37. However, Defendant failed to pay Plaintiff the bonus he earned in accordance with the written job offer.

38. Had Plaintiff not complained regarding the unlawful bidding process as outlined above, he would not have been terminated and he would have received the PPP bonus.

39. Upon his termination, Defendant failed to provide Plaintiff with notice of his right to continuation of health insurance coverage which was available to him during his employment by Defendant.

40. Plaintiff has sustained significant damages as a result of Defendant's actions. Indeed, Plaintiff has sustained damages, not limited to but including, the following:

- $35,000 Lost Annual Wages
- $14,000 Moving Expenses
- $3,600 Storage Expenses
- $30,000 Realtor expenses
- $900 Unreimbursed reimbursable expenses
- $7000 401k retirement fund employer match

41. Plaintiff has also sustained lost wages, emotional distress damages, litigation costs, attorney fees and other non-economic damages as a result of Defendant's unlawful conduct.

### COUNT I
### Defendant Terminated Plaintiff's Employment in Violation of the False Claims Act, 31 U.S.C. § 3730(h)

42. Plaintiff realleges and incorporates the allegations set forth above as though fully alleged herein.

43. Plaintiff was an "employee" of Defendant as that term is used in 31 U.S.C. § 3730(h).

44. Plaintiff engaged in protected activity under the FCA when he objected to Defendant's illegal bidding process by making several complaints to several members of management.

45. After Plaintiff complained about Defendant's bidding process, his relationship with Defendant grew hostile.

46. Defendant's removal of Plaintiff's access to important documentation/information, his placement on a paid leave and his eventual termination were pretext for retaliation for Plaintiff's opposition Defendant's illegal bidding process.

47. Defendant terminated Plaintiff's employment, harassed him and discriminated against him in retaliation for his opposition to Defendant's bidding scheme, in violation of 31 U.S.C. § 3730(h) and his efforts to stop violations of the False Claims Act.

48. Defendant's violation of 31 U.S.C. § 3730(h) have caused and will continue to cause Plaintiff to sustain economic and other harm, including, but not limited to, the loss of employment opportunities, the loss of future earning power, back pay and front pay, and interest.

49. By reason of the violation of 31 U.S.C. § 3730(h), Defendant has knowingly or recklessly damaged the Plaintiff in an amount to be determined at trial.

50. Defendant's violations of 31 U.S.C. § 3730(h) entitle Plaintiff to reinstatement with the same seniority status that he would have had but for Defendant's unlawful retaliation, recovery of two times the amount of back pay, including interest on the back pay, and Plaintiff's special damages sustained as a result of the retaliation, including his litigation costs, expert witness fees, and attorney fees.

## COUNT II
### Breach of Contract for Failure to Pay Bonus

51. Plaintiff realleges and incorporates the allegations set forth above as though fully alleged herein.

52. Defendant offered Plaintiff employment under certain terms and conditions, including the payment of a Performance Pay Plan bonus.

53. Plaintiff accepted Defendant's offer and he successfully performed his position, thus earning his bonus.

54. Defendant failed to pay Plaintiff the bonus as agreed to in the offer letter.

55. Defendant's failure to pay the bonus is a breach of contract.

56. As a result, Plaintiff has sustained damages in the loss of the bonus, costs and attorney's fees in bringing this action which he seeks to recover pursuant to O.C.G.A. § 13-6-11.

## COUNT III
### Violation of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA")

57. Plaintiff realleges and incorporates the allegations set forth above as though fully alleged herein.

58. Plaintiff is a covered employee and Defendant is an employer as those terms are defined under COBRA.

59. COBRA requires that employers send to employees notice of their right to health care continuation coverage under the Act under qualifying circumstances, such as termination of employment. 29 U.S.C. §§ 1163(2), 1166.

60. Defendant had an obligation to send Plaintiff notice of his rights for healthcare continuation within a certain timeframe upon his termination. The employer must notify its healthcare administrator of the employee's termination within 30 days, § 1166(a)(2); and the administrator then must notify the employee of his continuation right within 14 days, §§ 1166(a)(4)(A), (c).

61. After Plaintiff's termination on October 1, 2021, Defendant had up to 44 days to notify Plaintiff of his continuation rights, which would have been November 14, 2021.

62. Plaintiff never received a notification about his COBRA continuation right until February 11, 2022.

63. Defendant's failure to provide COBRA notices are intentional, willful and egregious.

64. Plaintiff has sustained damages as a result of Defendant's violations.

## PRAYER FOR RELIEF

WHEREFORE, as to all claims brought by Plaintiff, Damion Schinnerer, he prays that judgment be entered against Defendant as follows:

(a) the maximum relief allowed under 31 U.S.C. § 3730(h)(2), including two times the amount of back pay, interest on the back pay, and compensation for special damages sustained as a result of the retaliation, including litigation costs, expert witness fees, and reasonable attorneys' fees;

(b) the bonus payment earned under the Performance Pay Plan;

(c) the ERISA penalty of up to $110 per day of COBRA non-compliance;

(d) all attorneys' fees and costs incurred as a result of maintaining this civil action; and,

(e) such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this matter.

Respectfully submitted this 22ND day of February 2022.

*/s/SheriOluyemi*

Sheri Oluyemi
GA Bar 254547

Law Office of Sheri Oluyemi, LLC
2727 Paces Ferry Rd SE
Suite 750
Atlanta, GA 30339
T: 404-500-6202
F: 404-496-7202
E: soluyemi@losollc.com

*Attorney for Plaintiff*