IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAMION SCHINNERER,

    Plaintiff,

      v.

WELLSTAR HEALTH, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:22-CV-383-TWT

### OPINION AND ORDER

This is an action under the False Claims Act. It is before the Court on the Defendant Wellstar Health, Inc.'s ("Wellstar") Partial Motion to Dismiss [Doc. 17], which is GRANTED in part and DENIED in part for the reasons set forth below.

### I.  Background

The Court accepts the facts as alleged in the Second Amended Complaint as true for purposes of the present motion to dismiss. *Wildling v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019). This action arose from Wellstar's termination of Schinnerer's employment as assistant vice president of biomedical engineering. (Second Am. Compl. ¶¶ 13; Partial Mot. to Dismiss at 1-2). Schinnerer's employment agreement included a Performance Pay Plan ("PPP") that provided for an annual incentive bonus of up to 18.75 percent. (Second Am. Compl. ¶ 14). Schinnerer was responsible for overseeing the procurement process for biomedical equipment and services. (*Id.* ¶ 16).

Schinnerer alleges that, although Wellstar represented to the federal government that it had a competitive, fair, and equal bidding process for selecting equipment vendors, the vendor selection process was instead designed to give certain pre-selected vendors preferential treatment. (*Id.* ¶¶ 17-18). As a result, he alleges, the federal government overpaid for Wellstar's services. (*Id.* ¶ 19-20).

Schinnerer reported three distinct incidents of improper bidding resulting in the federal government overpaying for medical equipment to a management team. (*Id.* ¶¶ 21-24). In particular, "[h]e specifically complained about knowingly overpaying for services, which ultimately resulted in defrauding the federal government, amongst other issues." (*Id.* ¶ 24). Schinnerer alleges that his complaints were ignored but, as a result, Wellstar began harassing him by excluding him from meetings, keeping need-to-know information from him, accusing him of poor management, investigating him, and ultimately placing him on an extended administrative leave. (*Id.* ¶¶ 25-27). He alleges that after his initial complaints were ignored, he communicated them to Wellstar's ethics hotline, and he was placed on paid administrative leave shortly thereafter. (*Id.* ¶¶ 27-29).[1] Schinnerer alleges that he was placed on administrative leave solely for reporting Wellstar's illegal vendor selection processes. (*Id.* ¶¶ 30-33). He was ultimately terminated

---

[1] Plaintiff's numeration repeats paragraphs 27 and 28 in the Second Amended Complaint; this citation refers to the second set of those paragraphs.

2

from his position. (*Id.* ¶¶ 35). Schinnerer further alleges that, at the time he was terminated, he had successfully met the requirements for his job and was eligible for the PPP incentive bonus, but Wellstar failed to pay the bonus in accordance with his employment agreement. (*Id.* ¶¶ 36-37).

Wellstar moves to dismiss Schinnerer's retaliation claim under the False Claims Act (Count I), his breach of contract claim (Count II), and his breach of the duty of good faith claim (Count III) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Partial Mot. to Dismiss at 1-2). Schinnerer also raised a claim under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") (Count IV), which Wellstar has not moved to dismiss. (*See id.* at 2 n.1). The Court will set forth the arguments as to each claim, as relevant, in the discussion section below.

## II.  Legal Standards

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A.*

3

*v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555). Courts can consider documents outside the complaint in ruling on a motion to dismiss if: (1) the plaintiff refers to them in the complaint; (2) they are attached to the motion to dismiss; (3) their contents are not in dispute; (4) and they are central to the plaintiff's claim. *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1214 n.1 (11th Cir. 2020).

### III. Discussion

#### A. Count I – False Claims Act Violation

The False Claims Act authorizes a private citizen, acting on behalf of the government, to file a civil action against any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" or who "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim[.]" 31 U.S.C. § 3729(a)(1)(A)-(B). The False Claims Act also allows employees to seek relief from an employer where the employee "is discharged, demoted, suspended,

threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of" protected activity, or "lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop [one] or more violations" of the FCA. 31 U.S.C. § 3730(h)(1); see also United States v. HPC Healthcare, Inc., 723 F. App'x 783, 791 (11th Cir. 2018) (defining the "protected activity" and "unlawful discrimination" requirements).

Because Schinnerer is not raising a fraud claim under the False Claims Act, he need only make a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2); See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1103 (9th Cir. 2008). To establish a prima facie case of retaliation, a plaintiff must allege three essential elements: "(1) he engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to the plaintiff's protected activities." Simon ex rel. Fla. Rehab. Assocs., PLLC v. Healthsouth of Sarasota L.P., 2022 WL 3910607, at *5 (11th Cir. Aug. 31, 2022) (citation omitted). Protected activity, as defined in the statute, includes either "[1] lawful acts done by the employee . . . in furtherance of an action under [the False Claims Act] or [2] other efforts to stop [one] or more violations of [the False Claims Act]." 31 U.S.C. § 3730(h)(1). The second category of protected activity was only added in 2010 by congressional amendment. See Hickman v. Spirit of Athens, Ala., Inc., 985 F.3d 1284, 1288 (11th Cir. 2021). Now, the

5

retaliation provision extends coverage to "at least some set of people who make 'efforts to stop' False Claims Act violations," even if those efforts are not taken in furtherance of a False Claims Act lawsuit. *Id.* The Eleventh Circuit has defined "false claim" as "when a person or entity fails to comply with statutory, regulatory, or contractual requirements but certifies that it has complied with them." *Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1299 (11th Cir. 2021).

Prior to the amendment, the Eleventh Circuit interpreted § 3730(h) to protect "an employee from retaliation when there was at least 'a distinct possibility' of litigation under the False Claims Act at the time of the employee's actions." *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1303 (11th Cir. 2010) (citation omitted). The Eleventh Circuit has since acknowledged that the scope of protected activity is broader post-amendment, but it has not adopted a test for what constitutes other efforts to stop a False Claims Act violation. *See Hickman*, 985 F.3d at 1288. Some circuit courts, for their part, have endorsed an "objective reasonableness" standard: that is, the plaintiff's conduct is protected when "'it is motivated by an objectively reasonable belief that the employer is violating, or soon will violate,' the False Claims Act." *Hickman*, 985 F.3d at 1288 (quoting *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 201 (4th Cir. 2018)). Twice, the Eleventh Circuit has "assume[d] without deciding that this is the applicable standard," where the district court used, and the parties did not dispute, the objective

6

reasonableness approach. *Simon*, 2022 WL 3910607, at *6; *see also Hickman*, 985 F.3d at 1288-89. Here though, the parties applied only the longstanding "distinct possibility" standard to Schinnerer's retaliation allegations. (*See* Def.'s Mot. to Dismiss at 4; Pl.'s Br. in Opp. to Mot. to Dismiss at 11-13). Because the Eleventh Circuit has not definitively adopted another test for protected activity, the Court will follow the parties' lead and do the same.

The distinct possibility standard asks whether "an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion that the employer could have feared being reported to the government for fraud or sued in a *qui tam* action by the employee[.]" *Sanchez*, 596 F.3d at 1304. If the answer is "yes," then the complaint states a claim for retaliatory treatment under § 3730(h). *See id.* This inquiry generally raises related but distinct issues such as causation and notice. Namely, the False Claims Act imposes liability for retaliation only if the plaintiff suffered discrimination "because of" his participation in protected activity. 31 U.S.C. § 3730(h)(1); *see also Nesbitt v. Candler Cnty.*, 945 F.3d 1355, 1359 (11th Cir. 2020) (endorsing a but-for causation standard for retaliation claims under the False Claims Act). And to establish such a causal connection, the plaintiff must show that his employer "was at least aware of the protected activity" at the time of the adverse employment action. *United States ex rel. Chase v. HPC Healthcare, Inc.*, 723 F. App'x 783, 792 (11th Cir. 2018); *see also Mack v. Augusta-Richmond Cnty., Ga.*, 148 F. App'x 894, 897 (11th Cir. 2005) ("For the [employer] to have acted

in a retaliatory manner, it follows that they must have been aware of and acted as a result of [the employee's] allegedly protected conduct.").

Wellstar argues that Schinnerer fails to state a retaliation claim under the False Claims Act because he has not plead a protected activity. (Partial Mot. to Dismiss at 4). In particular, Wellstar contends that Schinnerer has not identified a False Claims Act violation that he complained about or investigated since he failed to provide any details about the allegedly illegal vendor selection process. (*Id.* at 8). Critically, Wellstar asserts, Schinnerer does not allege that the vendor selection process involved the submission of false claims to the government and, instead, he alleges only that he believed Wellstar's conduct resulted in the filing of false claims. (*Id.* at 8-10).

Schinnerer responds by reiterating the facts of the allegedly illegal vendor selection process that he presented in his Second Amended Complaint, referencing specific examples that include employee names, dates, methods, and vendors. (Pl.'s Br. in Opp. to Partial Mot. to Dismiss at 7-8). He also contends that he specifically complained to Wellstar that its process resulted in false claims to the government and ultimately escalated his complaints to Wellstar's Ethics Hotline, which put Wellstar on notice that it could be facing a False Claims Act suit. (*Id.* at 10-12).

The Court finds that Schinnerer's has properly stated a False Claims Act retaliation claim under Rule 8's notice pleading standard because the Second Amended Complaint, though not a model of clarity, fairly put Wellstar

on notice of the grounds of his claim. *See Erickson*, 551 U.S. at 93. Wellstar disputes only whether Schinnerer engaged in a protected activity, so the Court will not address the adverse employment action and causation elements of the retaliation standard. *See Simon ex rel. Fla. Rehab. Assocs., PLLC*, 2022 WL 3910607, at *5.

Wellstar's argument that Schinnerer has failed to identify a False Claims Act violation about which he complained is without merit. True, he fails to cite specific code sections in support of his contentions that Wellstar's vendor selection process was illegal, but his allegations that he complained to both management and Wellstar's Ethics Hotline that the vendor selection processes he had been involved in resulted in the federal government overpaying for equipment and services plainly allege protected activity as far as Rule 8 is concerned. *See Lombard's, Inc.*, 753 F.2d at 975. More to the point, Wellstar's arguments miss the mark because Schinnerer has brought a retaliation claim under the False Claims Act and not a qui tam action for False Claims Act violations. That distinction makes all the difference here.

Taking Schinnerer's allegations in the Second Amended Complaint as true, which the Court is obliged to do at the motion to dismiss stage, there is no question that Wellstar's receipt of complaints from Schinnerer to upper management personnel and its ethics hotline that it was knowingly submitting false claims to the government would put it in reasonable fear of being reported to the federal government or sued in a qui tam action for its conduct. *See*

*Sanchez*, 596 F.3d at 1304; see also *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 516 (6th Cir. 2000) ("Although internal reporting may constitute protected activity, the internal reports must allege fraud on the government."); *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 740 (D.C. Cir. 1998) ("[A]n employee's investigation of nothing more than his employer's non-compliance with federal or state regulations" is not protected activity. "To be covered by the False Claims Act, the plaintiff's investigation must concern 'false or fraudulent' claims."). In particular, Schinnerer's complaints to Wellstar noted that the processes in place resulted in false claims being submitted to the government. (*See* Second Am. Compl. ¶¶ 24-25, 27).

Contrary to Wellstar's contentions, Schinnerer was not required to adequately plead a plausible, underlying False Claims Act violation to survive a motion to dismiss on his retaliation claim. Instead, the distinct possibility standard involves only a factual inquiry into whether Wellstar was aware of Schinnerer's investigation and complaints of potential False Claims Act violations and whether those complaints could have reasonably put Wellstar in fear of further reporting or litigation. *See id.* But here, Wellstar essentially asks the Court to require Schinnerer to allege an underlying False Claims Act violation with the specificity that Rule 9 requires for such claims, in order to satisfy the protected activity element of his retaliation claim, by focusing its argument on the illegal vendor selection process portion of Schinnerer's allegations. (*See* Partial Mot. to Dismiss at 8-11). Plainly, that is not what the

10

distinct possibility standard requires for a retaliation claim. Accordingly, Wellstar's Partial Motion to Dismiss is denied as to Count I.

### B. Count II – Breach of Contract

In Georgia, a promise for future compensation in an employment agreement must be "for an exact amount or based upon a formula or method for determining the exact amount of the bonus" to be enforceable. *Arby's, Inc. v. Cooper*, 265 Ga. 240, 241 (1995) (quotation marks and citation omitted). The rationale for this rule, the Georgia Supreme Court explained, "is that the sum of money to be paid for performance of services under a contract should be definitely and objectively ascertainable from that contract." *Id.* at 241. "Where an employee bonus is based even in part on the exercise of discretion, the promise to pay a bonus in the future amounts to a promise to change the terms of compensation in the future and, thus, is an unenforceable executory obligation." *VanRan Comms. Servs., Inc. v. Vanderford*, 313 Ga. App. 497, 498-99 (2012).

Wellstar argues that the PPP is not an enforceable contract because it does not contain an exact amount or formula for calculating incentive bonuses and instead states only that the incentive bonus for Schinnerer's position was "up to 18.75%" of his base salary. (Partial Mot. to Dismiss at 11-12). Additionally, Wellstar contends that even assuming the PPP is an enforceable contract, the bonus provision required Schinnerer to be employed on the

payout date, and he has failed to allege that he remained employed by Wellstar on that date. (*Id.* at 11-13).

Schinnerer responds that the PPP is an enforceable contract because "the precise formula used to calculate bonuses based on performance is specifically identifiable and will be uncovered during discovery." (Pl.'s Br. in Opp. to Partial Mot. to Dismiss at 14). He also contends that whether or not he remained employed on the bonus payout date is a factual dispute that is inappropriate to resolve at the motion to dismiss stage. (*Id.* at 15-16). Finally, Schinnerer argues that the Court must convert Wellstar's Partial Motion to Dismiss to a motion for summary judgment if it considers the PPP that Wellstar filed in conjunction with its prior motion to dismiss and asserts that the Court cannot consider the document in ruling on this Motion because Wellstar has not properly authenticated it under Federal Rule of Evidence 901(a). (*Id.* at 17-19).

First, the Court concludes that it may consider the PPP attached to Wellstar's initial motion to dismiss, [Doc. 8], in ruling on the present Partial Motion to Dismiss. Schinnerer refers to the PPP throughout his Second Amended Complaint and its contents are undoubtedly central to his breach of contract claim. *See Cisneros*, 972 F.3d at 1214 n.1. Although Schinnerer has challenged the document's admissibility as being unauthenticated under Federal Rule of Evidence 901(a), the Court concludes that it is self-authenticating under that rule. Specifically, Rule 901 permits a

document's "appearance, contents, substance, internal patterns, [and] other distinctive characteristics . . . taken together with all the circumstances," to speak for itself. *See* Fed. R. Evid. 901(b)(4). Here, the alleged PPP submitted by Wellstar contains Wellstar's logo, identifies itself as the "Eligible Team Member Performance Pay Plan" as of September 2020, and contains the same provisions that Schinnerer references in his Second Amended Complaint. (*See* Doc. 8 at 1-2, 7; Second Am. Compl. ¶ 14). Further, Schinnerer has not alleged that the document is not actually authentic or raised any other dispute about the document's contents; instead, he only challenges Wellstar to authenticate the document. Thus, the document's appearance and contents, taken in conjunction with the fact that the document's provisions precisely track the PPP provisions Schinnerer references in his Second Amended Complaint, are sufficient to support a finding that the document "is what [Wellstar] claims it is"—in other words, that it is the PPP at issue. Fed. R. Evid. 901(a); *see also Ins. Tr. for Delta Retirees v. UnitedHealth Grp., Inc.*, 2015 WL 13754318 at *6-7 (N.D. Ga. Aug. 24, 2015) (applying Rule 901(b)(4) to find an insurance contract submitted with a motion to dismiss to be self-authenticating).

Second, Wellstar's Partial Motion to Dismiss should be granted as to Schinnerer's breach of contract claim. To establish a breach of contract claim, Schinnerer necessarily had to establish the existence of a valid contract. *See Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). But the PPP contains neither an exact amount nor a formula for

determining the exact amount of the bonus. *See Arby's, Inc.*, 265 Ga. at 241. Instead, the PPP states that for management level positions such as Schinnerer's, the employee must have earned a 3.0 or higher rating on his annual performance evaluation and that the bonus could be up to 18.75 percent of the employee's base salary, based on his level of achievement in certain performance evaluation categories. (Doc. 8 at 3-4, 6-7). The PPP does not appear to outline who performs performance evaluations or explain how the evaluators determine what percentage, mathematically, of each category an employee has achieved out of a total of 100 percent. Instead, it states only that the performance measures total 100 percent. (*See id.* at 4). In his Second Amended Complaint, Schinnerer alleges only that he performed his job well but has not alleged what level he was assigned for each category of his performance evaluation for the 2021 fiscal year. That information would be necessary to determine what bonus, if any, Schinnerer might have been entitled to.

Regardless, though, the performance evaluation clearly involves a subjective evaluation component that is wholly separate from, and not governed by, the PPP. As Georgia law requires the sum of the bonus owed to be "definitively and objectively ascertainable from the contract" in order for the contract to be enforceable, Schinnerer's argument that the exact formula can be uncovered during discovery is misplaced. *See Arby's, Inc.*, 265 Ga. at 241. Under the terms of the PPP, it cannot be determined what percentage—if

14

any—of a bonus Schinnerer would be entitled to, and the involvement of a subjective evaluation component necessarily negates any argument that the bonus amount could be "objectively ascertainable." *See id.*; *VanRan Comms. Servs., Inc.*, 313 Ga. App. at 498-99 (finding a promise to pay a bonus unenforceable when based even in part on an exercise of discretion). Accordingly, the PPP is not enforceable under Georgia law, and Schinnerer's breach of contract claim thus fails as a matter of law. Wellstar's Partial Motion to Dismiss is granted as to Count II.

### C. Count III – Breach of Duty of Good Faith and Fair Dealing

Georgia law does not allow a claim for breach of the duty of good faith and fair dealing to stand independently from an underlying claim for breach of contract. *Onbrand Media v. Codex Consulting, Inc.*, 301 Ga. App. 141, 147 (2009); *Irving v. Bank of America*, 497 F. App'x 928, 930 (11th Cir. 2012). On that basis, Wellstar argues that Schinnerer's breach of duty claim necessarily fails because his breach of contract claim fails, and this claim cannot stand alone. (Partial Mot. to Dismiss at 13-14). Schinnerer responds that Wellstar misconstrues the law and that the claim can stand alone so long as a separate breach of contract claim is alleged in the complaint. (Pl.'s Br. in Opp. to Partial Mot. to Dismiss at 22-24). The Court finds support in the law for Wellstar's position. Having concluded that Schinnerer has failed to state a breach of contract claim, his breach of the duty of good faith and fair dealing claim likewise fails because it cannot be maintained as a standalone, independent

15

claim. Therefore, Wellstar's Partial Motion to Dismiss is granted as to Count III.

### D. Conclusion

For the reasons set forth above, Wellstar's Partial Motion to Dismiss [Doc. 17] is GRANTED in part and DENIED in part. The Clerk is directed to dismiss Counts II and III of the Second Amended Complaint. Counts I and IV remain pending.

SO ORDERED, this ___20th___ day of October, 2022.

*[signature]*

THOMAS W. THRASH, JR.
United States District Judge